[Civ. No. 345.   Third Appellate District.—July 30, 1907.]

## JOHN H. STEWART et al., Respondents, v. MARY S. SMITH et al., Appellants.

WILLS—CONTRACT TO WILL PROPERTY—SPECIFIC PERFORMANCE.—Contracts providing for the disposition of property by will are enforceable in a court of equity, provided the contract is supported by an adequate consideration, is just and reasonable as to the party against whom it is sought to be enforced, was not secured by fraud or undue influence, is certain and definite, is not within the statute of frauds, and does not invade the legal or equitable rights of an innocent third party.

ID.—CONVEYANCE BY CHILDREN TO MOTHER—INTEREST IN FATHER'S ESTATE—CONTRACT TO WILL EQUAL SHARES.—Where all of the children, at the request of their mother, conveyed to her all of their interest in the estate of their deceased father, including real estate, in consideration of her contract to will all of the residue of the estate remaining at her death to each of them, if living, in equal shares, and to will the share of any deceased child to the heirs thereof by right of representation, such contract is enforceable in equity, at suit of surviving children and the children of a deceased child, who were omitted from her will at her decease.

ID.—PARTIES—PLAINTIFFS NOT MISJOINED.—There is no misjoinder of parties plaintiff. The purpose of the suit is to enforce a contract made by the deceased mother, in which all of the plaintiffs are directly interested, and the subject matter of which relates to that one transaction. It is of no consequence that the plaintiffs are not all interested in the action to the same extent.

ID.—INTERESTED PARTIES—EXECUTOR NOT A NECESSARY PARTY.—Where it appears that all persons claiming an interest in the estate of the deceased mother are made parties either as plaintiffs or as defendants, this is sufficient. The executor has no interest, as such, in the distribution of the estate, and is not a necessary party thereto, and was properly excluded from a contest as to the right of distribution of the whole or of a part of the estate.

ID.—CONTRACT NOT FOR A SALE—AGREEMENT FOR FUTURE CONVEYANCE. The contract by the mother was not for a sale, and section 1722 of the Civil Code does not apply. It is an agreement to convey at a future period.

ID.—STATUTE OF FRAUDS—TIME OF PERFORMANCE—STATUTE INAPPLICABLE.—Where the contract was not by its terms not to be performed within one year, the statute of frauds, in that regard, is inapplicable. It is sufficient that it may by its terms be performed within a year, even though it may not be performed within that time.

ID.—ORAL CONTRACT TO WILL REAL PROPERTY—UNTENABLE OBJECTION—EXECUTED CONTRACT—ESTOPPEL—FRAUD.—Where the mother orally agreed to will to her children all of the property of which she died possessed, the contract cannot be said, on its face, to be one to convey real property. But since it appears that the conveyance to her of real estate and other property was fully executed on the part of the plaintiffs, the defendants claiming under her will are estopped in equity from asserting that the contract is void under the statute of frauds. It would operate as a fraud upon the plaintiffs to withhold from them specific performance of the contract.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, and M. E. Sanborn, for Appellants.

S. J. Stabler, and A. C. McLaughlin, for Respondents.

BURNETT, J.—The action is in equity to compel specific performance of a contract to make a certain testamentary dis-

position of property. Two of the plaintiffs are children and the other two are daughters of a deceased child of James S. Stewart and Annie Stewart, decedents. All the other heirs, legatees and devisees of said Annie Stewart, deceased, are made defendants.

It appears from the complaint that said James S. Stewart, at the time of his death in 1870, left property, real and personal, of the value of $17,000. All claims against the estate did not exceed the sum of $1,000. In the same year Annie Stewart, widow of said James S. Stewart, was appointed administratrix of his estate and remained such until the administration of the estate was closed, April 8, 1893. All the estate of said James S. Stewart was community property. Some time in the year 1873 the said Annie Stewart, "for her better maintenance and support during her life, orally solicited and requested her said sons, John H. Stewart and Charles E. Stewart and her said daughter Elizabeth Reilay (*nee* Stewart), deceased, mother of said plaintiffs, Luella M. Reilay and Mabel S. Kellogg (*nee* Reilay), to deed, sell, assign and deliver to her all their and each of their shares and interests as heirs at law of their said father of, in and to their said. father's estate, upon the oral promise, contract and agreement, in consideration therefor, that she the said Annie Stewart would use and enjoy the said property for her support and maintenance during her life, and would manage said property and invest the income, rents, issues and profits thereof and at her death she would leave the whole of said property or the residue thereof and all increase and accumulations thereof to her said ten children share and share alike and would make, execute and leave in existence at her death a last will and testament wherein and by the terms of which she would give, demise and bequeath to her said ten children, share and share alike, or to the heirs of any deceased child by right of representation all the property of which she might die seised or possessed." The said John H. Stewart and Charles E. Stewart and Elizabeth Reilay accepted said proposition and agreed to do as requested by their mother upon the terms proposed by her. Thereafter on or about November 22, 1873, in compliance with their part of the agreement, they transferred to their said mother all their interest in the personal estate of their father and in conjunction with the other children and in pursuance of said agreement they executed and delivered to

their said mother a conveyance of their interest in the real property of their father, situated in Sutter county, California, and on or about June 5, 1883, in further compliance with said contract and in full consummation thereof and in conjunction with their mother and with all of the other heirs of the said James S. Stewart, they made, executed and delivered for a valuable consideration to one Charles P. Winzlau all their and each of their interests in and to all the real property of the estate of said James S. Stewart, situate in the state of Ohio, and all the corresponding proceeds of said sale were given to and accepted by said Annie Stewart in pursuance of said contract and agreement. The said Annie Stewart received the income and profits of said estate and applied a portion of the same and the proceeds of the sales of personal property to her support, and invested the residue in real property in the said county of Sutter. On April 8, 1893, the entire residue of the estate of the said James Stewart was distributed to the said Annie Stewart and was of the value of about $30,000. Said Annie Stewart died testate August 6, 1904, and left estate in said Sutter county of the value of about $32,000. Her will was admitted to probate and letters of administration were issued to defendant William W. Stewart. Said last will and testament provides that neither of the plaintiffs should receive anything by virtue of said will, and the complaint alleges: "That said Annie Stewart, deceased, thereby ignored, repudiated and violated said contract and agreement so entered into as aforesaid and so as aforesaid fully performed on the part of said John S. Stewart, Charles E. Stewart and Elizabeth Reilay."

A demurrer was interposed and overruled, and defendants declining to answer, judgment was entered as prayed for, establishing the agreement and decreeing distribution to plaintiffs of the proportion of the residue of the estate to which each is entitled under the terms of the said contract. From this judgment the appeal is taken.

That contracts providing for disposition of property by will are enforceable is clearly established by the authorities. There are, however, certain important conditions and limitations, hereafter to be noticed, under which a court of equity will decree a specific performance of such contracts. In the case of *Johnson* v. *Hubbell,* 10 N. J. Eq. 332, [66 Am. Dec. 776], it is said by the court of chancery of New Jersey that "the law

permits a man to dispose of his own property at his pleasure and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose as well by will as by a conveyance to be made at some specific future period, or upon the happening of some future event. It may be unwise for a man in this way to embarrass himself as to the final disposition of his property, but he is the disposer by law of his own fortune, and the sole and best judge as to the time and manner of disposing of it. A court of equity will decree the specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction."

The reports contain many cases abounding in interesting and instructive observations upon this subject, but we content ourselves with merely a citation of some of them: *Kafkaus* v. *Rosicky,* 41 Neb. 328, [43 Am. St. Rep. 685, 59 N. W. 788] ; *Lothrop* v. *Marble,* 12 S. Dak. 511, [76 Am. St. Rep. 626, 81 N. W. 885] ; *Svanburg* v. *Fosseen,* 75 Minn. 350, [74 Am. St. Rep. 490, 78 N. W. 4] ; *Nowack* v. *Berger,* 133 Mo. 24, [54 Am. St. Rep. 663, 34 S. W. 489] ; *Korminsky* v. *Korminsky,* 2 Misc. Rep. 138, [21 N. Y. Supp. 611] ; *Townsend* v. *Vanderwerker,* 160 U. S. 171, [16 Sup. Ct. Rep. 258] ; *Whiton* v. *Whiton,* 179 Ill. 32, [53 N. E. 722] ; *Bush* v. *Whitaker,* 45 Misc. Rep. 74, [91 N. Y. Supp. 616] ; *Owens* v. *McNally,* 113 Cal. 444, [45 Pac. 710] ; *McCabe* v. *Healy,* 138 Cal. 81, [70 Pac. 1008] ; *Schaadt* v. *Mutual Life Ins. Co.,* 2 Cal. App. 715, [84 Pac. 249]. The same general principles of equity jurisdiction apply to these cases, as stated in *Johnson* v. *Hubbell,* 10 N. J. Eq. 332, [66 Am. Dec. 776], that must be present in the enforcement of contracts to convey during the lifetime of the parties. In other words: There must be an adequate consideration ; the contract must be just and reasonable as to the party against whom it is sought to be enforced ; the other party must not have practiced fraud nor undue influence in securing the contract; it must be certain and definite, not within the statute of frauds, and its enforcement must not involve an invasion of the legal or equitable rights of an innocent third party. (Civ. Code, sec. 3391; Pomeroy's Equity Jurisprudence, sec. 1405; *Davison* v. *Davison,* 13 N. J. Eq. 252; *Shakespeare* v. *Markham,* 10 Hun, 322; *Rivers* v. *Rivers,* 3 Desaus. (S. C.) 190, [4 Am. Dec. 609] ; *Stanton* v.

*Miller,* 58 .N. Y. 192; *McClure* v. *McClure,* 1 Pa. St. 378;
*Wright* v. *Wright,* 31 Mich. 380.)

It is contended by appellants that the contract before us
does not satisfy the requirement of these principles of equity,
and, besides, that the complaint is objectionable in other re-
spects, and to the consideration of the specific objections made
by appellants and raised by their demurrer we direct our
attention.

1. There is no misjoinder of parties plaintiff. The con-
tention of appellants in this respect can be answered no better
than by a quotation from the case of *Whitehead* v. *Street,* 126
Cal. 70, [58 Pac. 376], where the supreme court, speaking
through Commissioner Cooper, says: ''A court of equity ab-
hors a multiplicity of suits. No fixed rule can be laid down
by which to determine whether a given bill in equity is or is
not subject to the objection of multifariousness. . . . A bill
in equity is said to be multifarious when distinct and inde-
pendent matters are joined therein. If the subject matter in
the main relates to one transaction around which the others
cluster, and each party has an interest in some matters in the
suit, and they are connected, even though all the parties do
not have an interest in all the matters in the suit, the bill is
not multifarious.'' (Citing Story's Equity Pleading, secs.
271, 272a; *Wilson* v. *Castro,* 31 Cal. 429. See, also, *Lanigan*
v. *Neely,* 4 Cal. App. 760, [89 Pac. 441].)

The purpose of the suit ·here is to enforce a contract made
with decedent in which all the plaintiffs are directly inter-
ested. The subject matter relates to that one transaction, and
it is of no consequence that the plaintiffs are not all interested
therein to the same extent. It would be a singular rule that
would require these plaintiffs to bring separate actions to es-
tablish the same contract. If they had done so defendants
would undoubtedly have a right to complain of the incon-
venience and unnecessary expense occasioned thereby. The
cases cited by appellants, as we view the matter, are not in
point and we deem it unnecessary to review them.

2. The executor is not a necessary party to the action. All
the devisees, legatees and persons claiming an interest in the
estate are made parties plaintiff and defendant, and as the ex-
ecutor has no interest as such in the distribution of the estate
he is properly excluded from a contest over the right to a
distribution of the whole or a part of it. (*Estate of Wright,*

49 Cal. 550; *Jones* v. *Lamont,* 118 Cal. 499, [62 Am. St. Rep. 251, 50 Pac. 766]; *Estate of Healy,* 137 Cal. 474, [7 Pac. 455].)

3. Attention is directed by appellants to several particulars wherein they claim the complaint is open to the objection that it does not state sufficient facts to constitute a cause of action. It is contended that if the contract of Annie Stewart is to be treated as a sale of her property to plaintiffs, it must be held to be void for the reason that it included property having neither an actual nor potential existence at the time. (Civ. Code, sec. 1722.) But it is too plain for argument that the contract does not purport to constitute a sale by her but an agreement to convey at a future period. It is manifest that said section has no application. Again, it is urged that the contract is void for two reasons: "1. By its terms the agreement was not to be performed within a year from the making thereof, and 2. It was an agreement for the sale of the real property. (Code Civ. Proc., sec. 1973; Civ. Code, sec. 1624; Story's Equity Jurisprudence, sec. 752.)" In response to the former specification it is sufficient to say that the contract in question is not "an agreement that by its terms is *not* to be performed within a year from the making thereof." It is said in *McKeany* v. *Black,* 117 Cal. 592, [49 Pac. 710]: "If the contract *by its terms* is not to be performed within a year it is void, but if it *may by its terms* be performed within a year, it is not, even though it may not be performed within that time." To the same effect are *Dougherty* v. *Rosenberg,* 62 Cal. 37, and *Blanding* v. *Sargent,* 33 N. H. 239, [66 Am. Dec. 721]. Again, the agreement on the part of said Annie Stewart was not to give, devise and bequeath all the *real* property, but "all the property of which she might die seised or possessed." The complaint does not show the character of the property left by her, but the allegation is she "was at the time of her death a resident of said Sutter county and left estate therein of the value of $32,547.23." It does not appear, therefore, affirmatively that the second specification of appellant to which we have above referred is in point. Appellants did not demur to the complaint on the ground of uncertainty as to the character of the property of the said Annie Stewart and we cannot assume that it was not personal property. But the complete answer to the whole proposition is that the con-

tract was entirely executed on the part of the three children. Relying, as they were justified in doing, upon the solemn promise of their mother to make the said testamentary disposition, they transferred to her all their interest in the father's estate, both personal and real, and the said mother used, enjoyed and treated as her own said property, and upon well-known principles of equity defendants are estopped from assailing the contract upon the grounds we have been considering. But it is said in this connection that plaintiffs' remedy is at law and not in equity. Certain cases are cited in support of this position which we shall consider briefly. In doing so the suggestion naturally arises that it is not surprising that there is some apparent conflict in the authorities in view of the fact that the rules of equity are somewhat flexible and in this class of cases considerable latitude is allowed to the discretion of the individual chancellor.

In *Windsor* v. *Miner,* 124 Cal. 492, [57 Pac. 386], specific performance was denied because the complaint did not state facts from which the court could determine whether the consideration was adequate and the contract as to the defendant just and reasonable. The scope of *Newman* v. *Freitas,* 129 Cal. 283, [61 Pac. 907], is seen in the following quotation from the syllabus: ''Under the settled rule of equity specific performance cannot be decreed unless it affirmatively appears that the contract is fair, just and equal in all its parts, and reasonable and equal in its operation; and if it is in any respect unfair or oppressive the plaintiff will be left to his remedy at law.'' It was justly held in that case that the contract was unreasonable and unjust.

*Stiles* v. *Cain,* 134 Cal. 170, [66 Pac. 231], is to the same effect. Specific performance was denied in *Russell* v. *Agar,* 121 Cal. 396, [66 Am. St. Rep. 35, 53 Pac. 926], for the reason stated by the court that plaintiff was suing ''to enforce a contract whereby he was to be paid some undetermined and undeterminable sum of money.'' The contract was held to be too uncertain to be enforced in equity or even to be the basis for an action at law for damages.

In *Re Hayden's Estate,* 1 Cal. App. 75, [81 Pac. 668], decided by this court, the contract was sought to be enforced against an incompetent. In the opinion written by Mr. Justice McLaughlin it is very properly said that: ''Courts will be more strict in examining into the nature and circumstances

of such agreements than any others and would require very satisfactory proofs of the fairness and justness of the transaction." It is pointed out in the course of the opinion that the contract was so lacking in the elements of certainty and fairness as not to commend itself to a court of equity. The same contract was under review in the case of *Hayden* v. *Collins*, 1 Cal. App. 259, [81 Pac. 1120], and a sufficient reason for a denial of specific performance is found in the following language: "A thorough analysis and study of the evidence convinces us that nothing was said or done to indicate an agreement. There was no meeting of minds on any definite proposition made by any of the parties. Nothing is indicated more than that Mrs. Hayden at one time probably intended to remember appellant in her will or 'do something for him.' "

The decision in *Henning* v. *Miller*, 66 Hun, 538, [21 N. Y. Supp. 831], a case at law, really rests upon the doctrine that parol evidence is not admissible to vary the terms of a written instrument. Some unnecessary language was used apparently in line with appellant's contention here, but it must be limited to the facts of that particular case.

But appellants admit that part performance may take a case out of the statute of frauds, but claim that the facts here are insufficient to meet the requirement of the law in that regard. We proceed to notice some of the authorities upon which they rely to support this contention. Judge Story, in his Equity Jurisprudence, section 261, states the rule as follows: "But a more general ground and that which ought to be the governing rule in cases of this sort is that nothing is to be considered as a part performance which does not put the party into a situation which is *a fraud* upon him, unless the agreement is fully performed." The authorities all agree as to the rule, although it is expressed in varying phraseology. For instance, Professor Pomeroy, in section 1409 of his work on Equity Jurisprudence, says: "The ground upon which the remedy in such cases rests is that of *equitable fraud*. It would be a virtual fraud for the defendant, after permitting the acts of partial performance, to interpose the statute as a bar to the plaintiff's remedial right. . . . The most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements and these two combined." Plaintiffs have brought themselves clearly within

the rule as thus announced. If it would not be a fraud upon them to withhold specific performance, then we mistake the meaning of the expression. They have not entered into the actual possession of the real property and made valuable improvements upon it, but relying on the promise of the mother they surrendered to her the possession and deprived themselves of the use of the property and the opportunity and means to make valuable improvements thereon. In an action to enforce specific performance of such a contract the surrender of possession of real property by one party to the other in reliance upon the latter's promise must be considered, in contemplation of equity, a factor as persuasive as though the former had *acquired* possession by virtue of said contract.

Of the cases cited by appellants in support of their contention, in the following specific performance was decreed: *Nowack* v. *Berger,* 133 Mo. 24, [54 Am. St. Rep. 663, 34 S. W. 489] ; *Quinn* v. *Quinn,* 5 S. Dak. 328, [49 Am. St. Rep. 875, 58 N. W. 808] ; *Svanberg* v. *Fosseen,* 75 Minn. 350, [74 Am. St. Rep. 490, 78 N. W. 4] ; *Lothrop* v. *Marble,* 12 S. Dak. 511, [76 Am. St. Rep. 626, 81 N. W. 885] ; and *Kofka* v. *Rosicky,* 41 Neb. 328, [43 Am. St. Rep. 685, 59 N. W. 788]. In *Dicken* v. *McKinley,* 163 Ill. 318, [54 Am. St. Rep. 471, 45 N. E. 134], it was held that the act of statutory adoption is not sufficient to take the case out of the statute of frauds. In *Shahan* v. *Swan,* 48 Ohio St. 25, [29 Am. St. Rep. 517, 26 N. E. 222], specific performance was denied because the acts relied upon were not necessarily referable to the contract, but might have been prompted merely by benevolence and affection.

*Grant* v. *Grant,* 63 Conn. 530, [38 Am. St. Rep. 379, 29 Atl. 15], is rather in line with the contention of appellants, but since plaintiff had been clothed, maintained, educated and treated as a daughter by the Grants, it could be held that she had received full consideration for the services rendered by her.

The decisive factor in *Owens* v. *McNally,* 113 Cal. 444, [45 Pac. 710], was the subsequent marriage of McNally. Hence it was held that the enforcement of the contract would wrong an innocent third party.

*Forrester* v. *Flores,* 64 Cal. 24, [28 Pac. 107], and *Salfield* v. *Sutter County,* 94 Cal. 546, [29 Pac. 1105], are based upon the familiar doctrine that the payment of money alone is not sufficient to justify specific performance.

*Flood* v. *Templeton*, 148 Cal. 374, [83 Pac. 148], was held to be not a case for specific performance for the reason that there was no showing as to the value of the land at the time of the contract or that plaintiff suffered any detriment or that the promisor gained any advantage by said contract, and also since plaintiff forbore to press a *fixed monetary* demand an action at law was the proper remedy.

In most of the cases cited where specific performance was decreed, personal services were the basis for the action, but in some of them the conveyance of property was the consideration. There is no difference, however, in principle if the elements of equitable cognizance are present. In the case at bar, assuming, as we must, that all the facts alleged in the complaint are true, only one conclusion can be reached in consonance with the principles of equity and justice and in harmony with the best-considered cases. No case cited appeals more strongly than this one to the conscience of the chancellor. There is no uncertainty as to the intention of the parties, and as to Mrs. Stewart the contract was eminently fair, just and reasonable. She received property more than thirty years ago from each of the children, of the value of nearly one thousand dollars, upon the promise that she would leave to the promisee an indefinite amount—it might be much less than she received—and at some uncertain period—as it developed, more than thirty years thereafter. As a cold business proposition no one would be so liberal as were the children. They deprived themselves of valuable property at a time when they probably could have used it to great advantage and profit for an uncertain amount that they might never live to enjoy. In fact, the mother did survive one of them. The circumstances of the transaction reveal clearly the adequacy of the consideration and cannot be aided by any comment in which we might indulge.

Again, the mother received *real* property as a part of the consideration and the *peculiar* value of such property is a decisive element in actions for specific performance. If the children had parted simply with personal property, under the decisions it might be that application would have to be made to the law side of the court, but here no such contention can be maintained. If the plaintiffs did not present a case for specific performance then it is idle to assert that it is ever proper to decree specific performance of an oral agreement to

devise property to a particular individual. The decision of the court below upon the admitted facts was just and equitable, and a contrary view is intolerable in contemplation of fair dealing and good conscience.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 26, 1907.